IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAMIEN WARSAVAGE : CIVIL ACTION
:
v. :
:
1 & 1 INTERNET, INC. : NO. 17-5104
:

MEMORANDUM

Bartle, J. May 24, 2018

Plaintiff Damien Warsavage has sued his former employer, Defendant 1 & 1 Internet, Inc. ("1 & 1") for wrongful termination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. He also alleges identical state law claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Const. Stat. §§ 951, et seq. Before the court is the motion of 1 & 1 to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I

When considering a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient

factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II

For present purposes we accept as true the allegations set forth in the complaint. Warsavage, a gay, Asisan-American male, began working for 1 & 1 in April 2006 as a "Billing CSR." Beginning in February 2014, he held the position of Third Level Agent and Support Specialist. In this role he was responsible for handling checks, mail, PayPal charges, and related tasks. Melissa Brown, one of Warsavage's direct managers, was an individual who assigned work to him.

On November 23, 2016, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity

Commission ("EEOC"), charge number 1513.[1] The charge is not attached and contents are not described in the complaint. The EEOC "Intake Questionnaire"[2] related to this charge, which is attached as an exhibit, states: "Based on confidential information shared with me, I have every reason to believe that this company engages in underhanded hiring practices that center heavily around non-transparency, favoritism, and retaliation." In addition, Warsavage wrote on the questionnaire: "I asked to meet with company leadership 3 times and only got to speak to an HR agent and HR director. Neither one was up front and honest about our hiring practices. And the company director has openly ignored me." Warsavage checked the following boxes on the questionnaire describing the basis for his claim of discrimination: race, sex, national origin, retaliation, and color.

In December 2016 and January 2017, shortly after he filed his first charge of discrimination with the EEOC, his workload increased. In addition, Warsavage was present on an

---

1. The complaint does not allege any facts prior to November 23, 2016 other than what we have previously stated.

2. At the top of the questionnaire in unidentified handwriting is the number "794," which is not the corresponding number of the November charge, but instead is the number of a later filed charge. The questionnaire is dated November 23, 2016. This is the date that the first charge, number 1513, was filed. Accordingly we are treating the questionnaire as related to this November 23, 2016 charge.

occasion in early January 2017 when Brown, one of his managers, mocked Asian Americans. Specifically, a coworker offered Brown Japanese candy and explained that "it was like a creamsicle," to which Brown responded, "'[a]hhh [s]oooo,' in a very stereotypical faux-Asian voice."

On January 19, 2017, Warsavage learned from Brown that he was being demoted. Brown did not give Warsavage a reason for the demotion. Thereafter he was locked out of accessing the computer system and assigned tasks that were normally assigned to a First Level Agent, two levels below his previous position.

The day after Brown told him he was being demoted, Warsavage took the day off from work. He emailed two of his coworkers and explained to them what had happened. In response, his coworkers informed him that other coworkers in the office believed that the demotion was in retaliation "for something" and that Brown had asked the two coworkers if they knew whether Warsavage had quit yet and if she should deactivate his keycard.

On January 27, 2017 plaintiff filed a second charge of discrimination with the EEOC, charge number 794, which is appended to the complaint. The following boxes are checked on the charge as identifying circumstances of alleged discrimination: race, color, sex, national origin, and retaliation. Additionally, the charge notes "hiring" as an issue. Also attached to the complaint is a letter from the EEOC

stating that it had received a request from plaintiff's counsel concerning the January 27, 2017 charge, but that "[a]fter a diligent effort, the Commission is unable to locate the records."

On January 31, 2017, Warsavage sent a letter to 1 & 1 notifying it of his intent to resign on February 24, 2017. Defendant responded demanding that he leave "almost immediately." The complaint does not allege the date when he stopped working at 1 & 1.

Warsavage received a right-to-sue notice on June 12, 2017 for his first EEOC charge. On August 15, 2017 he received a right-to-sue notice for his second EEOC charge. On November 9, 2017, Warsavage filed the instant action against 1 & 1 with claims denominated for wrongful termination and retaliation in violation of Title VII and the PHRA.

III

Defendant first asserts that Warsavage's claim for wrongful termination must be dismissed for failure to exhaust his administrative remedies.[3] According to defendant, neither plaintiff's first nor second charge filed with the EEOC alleges

---

3. A motion under Rule 12(b)(6) is the appropriate vehicle to raise failure to exhaust administrative remedies if the failure appears on the face of the complaint. See Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002); 2 J. Moore et al., Moore's Federal Practice § 12.34[4][b] (3d ed. 2018).

wrongful termination, constructive discharge, or, as defendant characterizes it, "separation of employment."

Before a complainant can bring an action under Title VII, he must exhaust his administrative remedies by filing a timely charge of discrimination with the EEOC. Hicks v. ABT Assocs., Inc., 572 F.2d 960, 963 (3d Cir. 1978). Exhaustion allows the EEOC the opportunity to settle disputes without litigation and gives the defendant notice of the charge of discrimination. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).

Generally a complainant has up to 180 days after the unlawful employment practice to file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(e)(1). However in a deferral state such as Pennsylvania, which has a state agency to investigate and adjudicate discrimination cases, the complainant has up to 300 days after the unlawful employment practice has occurred to file a charge with the EEOC. Id.; see also Noel v. The Boeing Co., 622 F.3d 266, 270 (3d Cir. 2010). Within ten days of the filing of the charge, the EEOC is required to serve "upon the person against whom the charge is made "notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice)[.]" 42 U.S.C. § 2000e–5(e)(1).

After the complainant files the charge, the EEOC is required to investigate to determine whether there is reasonable cause to believe that the charge is true. Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 359 (1977); 42 U.S.C. § 2000e–5(b). The complainant must allow a minimum of 180 days for the EEOC to investigate. Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). If after 180 days the EEOC has not resolved the charge, it must notify the complainant. Id. This is usually done through the issuance of a "right-to-sue" letter in which the EEOC states that it is not taking any further action. If the complainant has not received a right-to-sue letter within 180 days after filing the charge, he or she may request one. 42 U.S.C. § 2000e–5(f)(1); Burgh, at 470. "A complainant may not bring a Title VII suit without having first received a right-to-sue letter." Id. If a complainant chooses to bring a private action in the district court, the action must be filed within 90 days of his or her receipt of the right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1).

Under National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), an employee must file a charge with the EEOC alleging a discrete act of discrimination within the applicable 180 or 300 days after the discrete act occurs. A discrete act includes "termination, failure to promote, denial of transfer, and refusal to hire." Id. at 114. This filing

requirement applies even if the discrete discriminatory act is "related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113.

In contrast, a hostile work environment claim is not a discrete act. As the Supreme Court explained, "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. A charge of hostile work environment is timely if a contributory act occurred within this filing period. Id. at 115–16. Discriminatory acts that are not themselves "individually actionable may be aggregated to make out a hostile work environment claim" so long as "they are linked in a pattern of actions which continues into the applicable limitations period.'" Mandel v. M & Q Packaging, Corp., 706 F.3d 157, 165–67 (3d Cir. 2013) (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)).

Our Court of Appeals more recent non-precedential opinion, Green v. Postmaster Gen., 437 F. App'x 174 (3d Cir. 2011), is consistent with Morgan. It stated:

> While we have recognized that a complainant need not file a new EEOC complaint as to 'new acts that occur during the pendency of the case which are fairly within the scope of an [EEO] complaint or the investigation growing out of that complaint,' the [transfer of a complainant to a different

> location] does not qualify under this rule
> because it was a discrete act that occurred
> after [the complainant] had received her
> right-to-sue letter from the EEO on her
> earlier claim.

Id. at 178 (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) and citing Parisi v. Boeing Co., 400 F.3d 583, 586 (8th Cir. 2005)) (internal citation omitted).  While in Morgan the discrete acts occurred before any right to sue letter was issued and in Green thereafter, the required result is the same.  A specific charge must always be timely filed with the EEOC as to a discrete act of discrimination for it to be actionable.[4]

      Here, Warsavage was notified of his termination on January 31, 2017 when 1 & 1 "demanded he leave almost immediately."  Termination is a discrete act under Morgan.  Thus, if an employee wants to obtain relief in court under Title VII he must first timely file a charge of discrimination with the EEOC after the discrete act occurs.  Warsavage did not file at any time a specific charge alleging wrongful termination after his termination on January 31.  Thus, he has not administratively exhausted his remedies with respect to this claim.  We will grant the motion of the defendant to dismiss plaintiff's claim of wrongful termination.

---

4.  Morgan explains that exhaustion of administrative remedies is not jurisdictional and that the doctrines of equitable tolling and estoppel may apply in appropriate circumstances. Morgan, 536 U.S. at 121.  No such issues are raised here.

IV

We next address Warsavage's contention that he has alleged, as an alternative to the wrongful termination claim, a claim of constructive discharge.[5] The defendant argues that plaintiff has failed to plead facts that state a claim, and even if he did so, he has failed to exhaust his administrative remedies.

Constructive discharge occurs when "an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Green v. Brennan, 136 S. Ct. 1769, 1777 (2016) (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)). A constructive discharge claim "accrues — and the limitations period begins to run — when the employee gives notice of his resignation, not the effective date of that resignation." Id. at 1782. A plaintiff has a "complete and present cause of action" such that he can file suit for constructive discharge only after he has given notice of his

---

5. Although the complaint does not explicitly title any of the counts as "constructive discharge," in his responsive brief plaintiff states that he "admits that he tendered his resignation, and does maintain a constructive discharge claim." He suggests that if the court finds that the complaint lacks such a claim it can be remedied by the filing of an amended complaint. We construe the complaint in the light most favorable to the plaintiff and deemed the plaintiff to have alleged a claim for constructive discharge.

resignation.  <u>Green</u>, 136 S. Ct. at 1777 (citing <u>Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.</u>, 559 U.S. 175, 189–90 (2010)).  Constructive discharge, which is a form of wrongful termination, is a discrete act.  See <u>Morgan</u>, 536 U.S. at 114; <u>see</u> <u>also</u> <u>Green</u>, 136 S. Ct. at 1777.  Thus the employee must timely file a charge of discrimination after the constructive discharge occurs.  <u>Id.</u>

Here, Warsavage sent in his notice of resignation to 1 & 1 on January 31, 2017.  Like wrongful termination, constructive discharge as a discrete act requires the complainant to file a specific charge of discrimination.  Since Warsavage never filed a specific charge with the EEOC after the claim accrued on January 31, 2017, he failed to exhaust his administrative remedies for this claim.  Accordingly we will dismiss his claim for constructive discharge.

V

We turn to Warsavage's claim for unlawful retaliation in violation of Title VII.  Defendant argues that the claims arising from plaintiff's first EEOC charge filed November 23, 2016 are time-barred since the complaint in this court was filed on November 9, 2017 more than 90 days after Warsavage received the June 12, 2017 right-to-sue letter for the first charge.  Plaintiff counters that the discriminatory acts that formed the basis of his first EEOC charge are incorporated into the second

charge for which he received a right-to-sue letter on August 15, 2017. If so, his lawsuit, including the first EEOC charge, would be timely. According to plaintiff, this makes his first EEOC charge timely under the continuing violations doctrine.

We have previously noted that under the continuing violations doctrine, "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" Mandel, 706 F.3d at 165 (quoting O'Connor, 440 F.3d at 127). In order to allege a continuing violation, the plaintiff "must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." Id. at 165–66. The doctrine is "most often applied to hostile work environment claims, where not every act or remark itself is actionable but the series of actions gives rise to a claim based on the aggregate wrongs." Patterson v. Strippoli, 639 F. App'x 137, 141 n. 7 (3d Cir. 2016). At least one discriminatory act in the pattern must occur within the applicable 180 or 300 day EEOC filing period in order for the claim to be timely. Mandel, 706 F.3d at 165.

Warsavage has not shown that "all acts which constitute the claim are part of the same unlawful employment

practice[.]" Id. at 165-66. Neither the complaint nor its exhibits set forth any relevant dates or facts that occurred prior to the filing of the first charge with the EEOC on November 23, 2016. The charge itself is not attached to the complaint and its contents are not described in the complaint. The only information that we have relating to the first charge comes from the attached questionnaire. On it, Warsavage wrote that he has "every reason to believe that this company engages in underhanded hiring practices that center heavily around non-transparency, favoritism, and retaliation" and that he has repeatedly tried to speak with higher ups at 1 & 1 but only had the opportunity to once, and he believed that no one "was up front and honest about our hiring practices."

While we must at this stage accept all well pleaded facts in the complaint as true, the complaint contains nothing relevant about the facts on which the first EEOC charge was based. Without any facts showing the basis for the charge or the charge itself, we are unable to determine whether the acts that took place prior to the first charge are linked with the acts that took place between the first and second charge such that they constitute a "pattern of actions." Mandel, 706 F.3d at 165. Accordingly, we will dismiss as time-barred the retaliation claim arising out of the first EEOC charge of

November 23, 2016 and the June 12, 2017 right-to-sue letter that followed.

VI

We turn to plaintiff's claim for retaliation described in the second charge of discrimination filed with the EEOC on January 27, 2017. The defendant argues that the complaint fails to plead a causal connection between Warsavage's activity protected by Title VII and the adverse action taken against him by 1 & 1.

In order to state a claim for retaliation, the plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employee's adverse action." Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567–68 (3d Cir. 2002) (quoting Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

Defendant concedes that Warsavage engaged in activity protected under Title VII when he filed the two charges of discrimination on November 23, 2016 and January 27, 2017. It also concedes for present purposes that the following were adverse actions taken by it against Warsavage: the unreasonable increase in workload in December 2016 and January 2017; his

demotion; the lock out of the plaintiff from his computer system; and the requirement that he perform basic tasks.

Although in some limited cases temporal proximity can be sufficient to create an inference of causal connection for the purposes of a prima facie case of retaliation, "[t]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive[.]'" Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (citing Krouse, 126 F.3d at 503).

Here we need not consider solely temporal proximity since we know that within ten days of the second EEOC charge, or by December 3, 2016, the defendant was served by the EEOC with notice of Warsavage's first charge of discrimination. 42 U.S.C. 2000e–5(e)(1). Thus 1 & 1 had knowledge of the this charge by this date. In addition, Warsavage began to suffer adverse employment action within eight days of filing the first EEOC charge, or December 1, 2016, and it continued into January 2017. Accordingly, Warsavage has stated a claim of unlawful retaliation.

### VII

In Count Two Warsavage raises claims of wrongful termination and retaliation in violation of the PHRA. We have

supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367.

The Third Circuit has held that the PHRA is treated as "identical to federal anti-discrimination laws[,]" such as Title VII, except when otherwise specified by the statute. Fogleman, 283 F.3d at 567. Neither party argues that the PHRA should be interpreted differently from Title VII. For the reasons discussed above, we will dismiss Warsavage's claims under the PHRA in Count Two for wrongful termination, constructive discharge, and retaliation related to the first EEOC charge filed on November 23, 2016.

Finally, we are denying the motion of 1 & 1 to dismiss plaintiff's claim of retaliation in violation of Title VII related to the second EEOC charge filed on January 27, 2017. "Employer liability under the [PHRA] follows the same standards set out for employer liability under Title VII." Knabe v. Boury Corp., 114 F.3d 407, 410 n. 5 (3d Cir. 1997). Thus, we will also deny defendant's motion with respect to the claim of retaliation in violation of the PHRA arising out of the second EEOC charge.